also known as Twin, also known as Kett, Appellant. Mr. Smith for the Appellant, Mr. Gwynne for the Appellant. Happy Bill of Rights Day. Uh, okay. May it please the Court, my name is Greg Smith and as the Sixth Amendment Appointed Counsel, I represent Marquete Murray as a member of the Appellant Court. This Court should vacate the judgment below and remand this case to another judge because the government failed to follow the letter and spirit of its plea agreement with my client and because Mr. Murray's Appointed Counsel was ineffective in representing him at sentencing. No person looking at this plea agreement would reasonably expect... Even if we accepted everything you said? Um, judge, um... The judge below showed absolutely no misconduct, no failures, no nothing, right? So why would you need another judge? Simply because I think the essence of the argument is the government's recommendation should never be heard and it's hard to unring the bell. If the government is recommending more than 30 months, it's hard to unring that bell. Do you think, Mr. Smith, that our district judges do not read D.C. Circuit opinions? I suppose not, Your Honor. So, if we write an opinion exactly the way you want, every district judge will know exactly what happened in this case? Fair enough, Your Honor. Moving on to the merits, then. No person looking at this plea agreement would reasonably expect the government, without seeking any upward departure or variance, was going to argue for a sentence of 33 months in prison if my client did nothing more than what the plea agreement itself required of it. In the plea agreement, the estimated guidelines range was a defined term, 24 months to 30 months. Yes, the government reserved to seek a sentence above the estimated guideline range based on 3553A factors, but their higher request here was not based on any upward variance requested under 3553A. The plea agreement also said that a sentence within that estimated guidelines range, in other words, within that 24 to 30 months, would constitute a reasonable sentence in light of all the factors set forth in 3553A. So, if true and nothing changed, how is a 33-month sentence not greater than necessary here? So, the plea agreement also said, under estimated criminal history category, it says, and this is at JA 26, based upon the information now available to this office, your client has no criminal conviction. Accordingly, your client is estimated to have zero criminal history points, and then the 24 to 30 is explicitly based upon the agreed total offense level and the estimated criminal history category set forth above. And so, the entire thing was predicated on the notion that the information now available to the office indicated that there were no criminal convictions. But everybody knew that if the pleas went forward as contemplated, there would be, or at least might well be, criminal convictions. I know that you have an argument about the order in which that would, whether sentencing would occur before the convictions came about, but just everybody kind of understood that that was a possibility. Your Honor, I disagree with that for this reason. What it said, it goes on to say, in that point you referenced, it says, your client acknowledges that if additional convictions are discovered during the pre-sentence investigation, here, there were no new convictions discovered. There were only convictions manufactured. Nothing was discovered that wasn't already known. It's not something that was unknown. And let me just – You're saying the information now available to the office included that there were going to be two more convictions for certain under this plea agreement. They knew it full well at the time, and they've now said that they wouldn't have allowed it to proceed in any other way. So in essence, what they had was an estimated guideline range that they put in the plea agreement that they claim was impossible. And that's problematic. I don't think that it's fair for the government to list an estimated guideline range that they now claim never could have happened. And let me just say, this is not just – this was just three months here, admittedly. But in another case, it could be much more. Suppose this is a drug case with a first offender, but it was part of a global plea. And the government said, well, the estimated range is 57 to 71 months, for example. But then, as part of the plea agreement, the defendant agreed to enter into two state pleas. And suddenly, the defendant is a career offender. Is that acceptable? And would you expect competent counsel there, who is suddenly seeing his client facing 200-plus months instead of 57 to 71 months, to just say, well, gee, that's too bad for the client. I guess there's nothing even to be said? Well, the challenge, I think, for you is that you have language that you may want to say is ambiguous, but you have to prevail under a plain error standard in this case. Yes, Your Honor. So where is it plain in this settlement agreement that those – they had already factored in those other two convictions, or they were promising not to factor those into the criminal history? Well, I think part of our ineffectiveness argument is that no objection was raised. That's the ineffectiveness argument. I'm talking about the – Okay. I'm assuming you're giving up your argument that you can win on the merits, or are you – I guess what I would say is I think that this Court, as a matter of oversight and policy, ought not to allow this to occur. You should not allow plea agreements to become potential traps to trick unwary defendants, whether it's here or in that career offender case. You shouldn't allow the government to include estimated ranges that they know are impossible. You should hold them to the spirit of the plea agreements that they enter. And it's particularly true – Is it the spirit or the text? Are you saying that on this text they knew they had to mean that range knowing these other two were coming, or are you saying the text supports them, but we have to do this as a matter of policy and spirit? I believe it violated both the letter and the spirit because there were no new – after this plea was entered. The only thing that happened was that they found was that plea agreements went forward or pleas were entered that they knew all along that they were going to insist, were going to have to be done before this federal sentencing as a part of the plea agreement. They gave this plea agreement to a defendant. Will. Can I ask you about your ineffectiveness in this claim? So I take it your argument is not that the relief for that claim, or even for your breach of the plea agreement claim, is that the plea agreement should be set aside and there should be a new opportunity to determine whether a plea of guilty was in the defendant's interests given the possibility that the sentencing range would go up if the two forecast convictions came about as anticipated? Your Honor, I think if necessary we would challenge the plea itself as well as the sentencing. I think that the plea itself, the plea agreement itself, is flawed if the government is not going to abide by its spirit. That's not what you're – I'm just reading your conclusion. You didn't ask – you're not asking to go to trial here, are you? Your Honor, I'm asking for a remand on the issue of ineffective assistance. In your prayer for relief it says, judgment should be vacated, case should be remanded for a new sentencing hearing or an evaluation of whether providing an effective assistance of counsel. Yes, Your Honor. And on the latter, we would reserve the right to say that counsel never should have allowed a plea agreement to proceed that had an estimated range that could – that was impossible and that the plea agreement itself is – Well, that's a – But you're correct. If the government had simply asked for 30 months, which they acknowledged was reasonable in the plea agreement, then we would not be here today and would not be complaining. Yeah, I mean, they might have acknowledged that that's reasonable given what was contemplated by the agreement. It doesn't necessarily mean that some other sentence isn't also a possibility and would also potentially be reasonable too. Right. But if you abide by 3553A, Your Honor, which says it has to be not greater than necessary and they're acknowledging that 30 months is reasonable, I don't see how more than 30 months is not greater than necessary. That arraignment was never made below, and it should have been. Your argument doesn't have to be whether it's reasonable or not. The question is whether it's reasonably likely to have led to a prison term that would be shorter. That's the prejudice test, right? I'm reading from our King Gore opinion. The question isn't whether the defendant's prison term would have been drastically shorter, just whether it was reasonably likely the prison term would not have been as long. Yes. And we're saying it's reasonably likely the prison term would not have been 33 months. So with that kind of relief, what you're asking for is to go back to resentencing with the judge now knowing, either a new judge or the same judge, that the estimated sentencing guidelines were based on the government's full knowledge that there were going to be two intervening police. Yes. And the question is, do we think it reasonably likely the judge might have then stuck to the estimated guidelines? That's right. Let me try to close by saying this. They gave this plea agreement to a defendant who was in the criminal justice system for the first time. It said 24 to 30 months. What do you think he's going to believe and think? What would anyone think? That is the deal, unless something new comes up, and not something new that the plea agreement itself was manufacturing, where the goal posts are basically being moved on a client through no fault of his own. That was just wrong. If the government expected or knew that two criminal history points were going to be added, and if its plans were such that it was going to make that plus two inevitable, it shouldn't have written down an estimated range of 24 to 30 months that it knew was impossible. It shouldn't have presented a plea agreement that essentially hit the ball. You should care about this for institutional reasons, because I can tell you there is no way to explain to my client how 24 to 30 months became 27 to 33 months. All this does is raise disrespect for our criminal justice system and distrust. It feels like a bait and switch, and may actually be a bait and switch here. Now, I don't want to impugn their motives. The prosecutor is here. I respect her. We've worked together. My client is not here. But I want you to imagine what it's like for me to try to explain this to him, because there is no way I can ever explain to a defendant or a defendant's mama how this is fair. The most reasonable construction of this plea agreement should be that the government can't argue for more than 30 months unless it provides a reason other than the plea agreement itself for why more is justified. That was the spirit of this plea agreement and even the letter of this plea agreement. I submit this case should be remanded. The Abney case is one where ineffective assistance was found for counsel's failure to seek a continuance of a sentencing. Maybe here was ineffective assistance for the counsel not to seek an acceleration of the sentencing or in his failure to point out the fact that the plea agreement expected 24 to 30 months or in failing to argue that anything over 30 would be more than necessary and especially in failing to object that the government was violating its plea agreement, leaving me here on appeal with, as Judge Millett noted, nothing more than a plain error standard. More should have been done by counsel below. Thank you. We'll hear from the government. Good morning. Good morning. I'm going to please the Court. Eric Wynne for the United States. Appellant can't show any plain error in the government's execution of the plea agreement or make out a colorable claim of ineffective assistance of counsel. I'm a little confused by the government's brief which says, even if the parties did not realize that the two separate guilty pleas agreed to would increase the applicable guidelines range. What did the government realize? Did the government know that, in fact, the sentencing guidelines would be higher at sentencing than the estimated guidelines in the plea agreement? What's the fact here? It should have been clear to the government at the time. I'm not sure what was actually known by the prosecutor. It should have been clear that, of course, at the time of the plea there were zero convictions and a criminal history score of one, and that as a condition of the plea agreement, two additional convictions would have to be entered, which would, of course, increase the criminal history score to criminal history score two. So then why doesn't the plea agreement say, in light of the information now known to the government, including the fact that you will be pleading in superior court, your estimated criminal history is two, category two. Why does it say that? I think that the statement that's in the plea agreement was correct at the time of the plea agreement. Isn't it correct that the purpose of giving estimated sentencing guidelines is to give both parties an idea of what the ultimate sentence will be subject to variances, departures, et cetera? Yes, Your Honor. And that is not what's done here. What's done here is to give an estimated guideline that I take it you're saying is absolutely false. That is, it's absolutely not true that that will be the estimated guidelines at the time of the sentencing. Well, the only issue, I don't think that that's right. Okay. I think it was true at the time. Is there any chance in the government's view that it would be true at the time of sentencing? That the range would be 24 to 30 months? Yeah. No. No chance at all? No. Well, then don't you think at the minimum that this is misleading? I think that that, I understand, I certainly understand the Court's concern about that, and I think that this is an issue that will help the office think through how to draft these agreements moving forward. I don't think, to the extent there's a concern about appellants knowing what he was getting into, I think that the facts of this case, there are several things in the plea agreement, the PSR and the sentencing colloquy, that should give the Court confidence that appellant really did understand what he was getting into. Well, the sentencing colloquy is too late. He's already entered into the plea agreement. So my question is why isn't this misleading? Estimated guidelines range should indicate what the estimated guideline range is actually going to be. Why isn't this a misleading plea agreement? At least, at least misleading. And at worst, if it's ambiguous, then we have to, under our own law, in the Supreme Court law, read it in favor of the defendant. If I could take that last point first. Yes. I think the Supreme Court's case in Puckett addresses this interplay of how the plain error standard works in cases. We're not talking about plain error yet. First question in plain error is, is there error? Right? So let's start with error. Isn't this misleading? And any ambiguity should be read in favor of the defendant here. I don't think that this is misleading in that it states an accurate estimate of the guidelines range based on the number of convictions appellant had at the time of the plea. And that includes the caveat that if something changes between plea and sentencing. How do you say something changes? It says discovered. How do you define discovered? The dictionary says finds unexpectedly. Were these other convictions unexpected under this plea agreement? The pleas were not unexpected. No, they were not. They were. Knowing that they were coming, was that part of the information available at the office at the time? It was, Your Honor. The convictions, of course, weren't entered. I suppose you could say the convictions themselves hadn't happened yet. It's just that it was, the way you're outlining it, it was pretty darn likely, and I think certain, that they were going to happen. That's true, Your Honor. So it seems at least incomplete because it's true, it's literally true, that based on the information now available to the office, your client has no criminal convictions. That seems literally true because there actually were no criminal convictions. Correct. It's just that everybody understood that additional criminal convictions were going to come about because of the very operation of the agreement. I agree with that. And there was no contemplation on the part of the government that the sentencing might happen before those guilty pleas was entered such that there still would be zero convictions. That's right. So everybody understood that the convictions would actually be on the record so that at the time of sentencing there would be more convictions. Assuming Appellant went through with his obligations, yes, that is true. And, Your Honor, I think if the court does find that it was error, I think Appellant would still have a problem in showing that it was plain error given that there are different reasonable ways to read the agreement, and the Supreme Court has said that if the government has a colorable explanation, even if ultimately inadequate, but a colorable explanation for how its conduct squares with the agreement, it suggests that it would be impossible to show that. Which Supreme Court case used the word colorable? Used the word colorable? Yes, it does, Your Honor. Do we factor into colorable analysis the expected role of the government in candor, not trying to be at least ahead of the ball at all? Shouldn't that be factored? You're held to a higher standard here. So how does that get factored into what's colorable? I think, Your Honor, on the facts here, there's no indication that the government was intending to hide any information from Appellant. And I think something that really should give us confidence that Appellant did understand is that he had an opportunity to read the pre-sentence report. The pre-sentence report makes clear he and his counsel reviewed it, reviewed the 27- to 33-month calculation, and had no objection to it. It was after the plea, correct? It was after the plea. And at the time of the plea, the court itself seemed to read the agreement the way the defendant is. Transcript page 36, you talk about if the United States Probation Office discovers additional convictions that have not been disclosed in your plea agreement. Now, the fact that he's going to have these two convictions is disclosed in the plea agreement, right? So the district court itself seemed to be reading it. So how do we factor that into the plainness of the error? I think that that is certainly one factor to consider in terms of whether that is a reasonable way to read the plea agreement. So we're told what the defendant understood, and we have evidence as to what the district court understood. And we have evidence that the government knew there were two more coming, but maybe was phrasing this in a way to not discuss that, even though it was fully contemplated and, in fact, required before he would be sentenced, and that's still not plain enough. I don't think so. I think a reasonable way to read the agreement, perhaps not the best way to read the agreement, is that additional convictions that were actually entered would increase the criminal history. When you say reasonable, I'm trying to figure out what you mean given, again, the standards to which we're going to hold the government for entering a plea agreement. Is it the fairest reading of the plea agreement? What's the fairest reading of the plea agreement? I do think the fairest reading is the agreement said that at the time of the plea there were no convictions and this is what your range would be. But something could change. It also referenced the information available to you. It said convictions estimated herein, herein, the plea agreement, in the exact same language, and it used the verb discovered. Are you going to say that's the fairest reading of this plea agreement? It's certainly a reasonable reading, and I understand if the court finds that it was error, even if it finds it was plain error. I don't know. One thing I'm not following is if the agreement was as complete as it could have been, which is to say this agreement itself contemplates the two additional convictions will come on the record. When those convictions come on the record, the estimated sentencing range will be different. It still couldn't be the case that if the two convictions were accounted for, then the sentencing range would turn out to be 24 to 30 months. That's just impossible as I understand it, right? That's right. But it did give appellant a baseline to understand, given all the other information we know, this is the range. Now, if the criminal history score changes, it will change that 24 to 30-month range.  So I guess what I'm trying to say is the error in the agreement would be the failure to account for the reality that everybody understood that two more convictions were coming and that that would affect the range. The error in the agreement, I'm not quite understanding how 24 to 30 months then becomes a binding range because if everything was disclosed that let's just say that the government was obligated, assume for purposes of argument, the government was obligated to acknowledge that two more convictions were coming and everybody should have understood that and that should have been provided for in the agreement then we would have all been operating on the basis of perfect information. The answer could not be then the range would be 24 to 30 months. No. So the error isn't in the error. It's just I'm not sure how you get to the point where the 30 months is binding given that that's not a consequence of complete information. Right. As I understand it, the claim of prejudice, of error and prejudice is that that estimate somehow bound the government to advocate for no longer than 30 months in its allocution, which is plainly inconsistent with the text of the agreement which expressly reserves the right to seek a sentence above the 30 months. If by variance or departure, I'm sorry. If by variance or departure, which is not what you asked for, in either case. Well, I do think that what we asked for was a sentence of 33 months based on all of the 3553A factors. But it can't be that way. It's very hard. I know that was your argument in your brief. It seems very difficult to say that the language that says the government reserves the right to seek a sentence above the estimated guidelines range is in any way designed to deal with this sort of situation. Typically what happens is the range is such and such. Everybody agrees on the range, but then other considerations come into play to tell the court based on the government's advocacy that the sentence actually should be higher, not this sort of thing doesn't seem like what was contemplated by that sentence. Well, just to take the prejudice side of it, I think it's helpful to think through if you accepted Appellant's argument and that the government had to go back and tell the court, yes, we estimated a range of 24 to 30 months, something that was already in front of the district court, how would that play out? We would say we agree to this estimated range. We reserve the right to seek a higher sentence. We could go back, seek the 33 months based on all the 3553A factors. Of course, nothing the parties agreed to. This wasn't an 11- Well, the judge might think that the government is not cutting square corners and under those circumstances might not go above. I think if I were a district judge, I'd be pretty upset about this actually. And so that would be a reason for the judge to stick to the estimated guidelines as an understanding of what the parties agreed to. To the max, maybe, of the sentencing guidelines, but still of the sentencing guidelines. Your Honor, I appreciate that. And, again, I think this dialogue will be very helpful to our office in terms of thinking through these agreements moving forward. Let me ask you two things. One is the thing you said about colorables struck me. Like, why didn't I see that? And I think the reason I didn't see that is they're not talking in Puckett about colorable readings of the plea agreement. It says the government will often have a colorable, albeit ultimately inadequate, excuse for its non-performance of an agreement. It's not the same thing as saying that any colorable reading of the agreement is not plain error. And I think the sentence goes on to talk about- There is no sentence. Nothing that goes on. It's a C note to Supra. I'm sorry. And maybe that footnote or otherwise in that paragraph where it says, you know, that will also be the case where the agreement is not a model of clarity. Well, it starts by saying plea agreements are not always a model of draftsmanship, so the scope of the government's commitments will on occasion be open to doubt. But this was a situation where the government did not perform, Puckett was. You're saying you are performing, right? We are saying we are performing. We do say that we are performing. I think it's that phrase about how they're not necessary models of draftsmanship and the plain error standard, as the Court said, will have bite in those circumstances. So here, to the extent that this isn't a plain-that our obligations aren't plain and there's some room for debate- Let me ask one more question. Why is the government so sure that the sentence in the Superior Court cases, that the pleas couldn't have come after the sentencing in this case? I think that our position would have been that if appellant did not go through with his obligation to plead guilty- Where in the sentencing, in the plea agreement, is there an obligation to do that before? It's not expressed in the agreement. Where is it applied? I think there are two places, Your Honor. Just to start at the remedies end, I think the government would read the remedies section on page 31 of the record, not to obviously give it any remedy for addressing the defendant's failure to plead guilty once sentencing had occurred. The remedies that are contemplated in paragraph 11 seem to be that the government could take that into account at the time of sentencing. Why? Why? It says the government will be free from its obligations. The client will be fully subject to criminal prosecution for any other crimes, including perjury and obstruction of justice. You'll be free to use against your client, directly or indirectly, all statements made by your client. So if the defendant doesn't plead the next day, then you go back to the original indictment, you charge him with that, and you charge him with anything else you have. I think that would raise at least a serious question about double jeopardy under its- Well, then the government has drafted a poor plea agreement on its own behalf. But I don't see why we have to read- You want to read a plea agreement that is, at best, extremely ambiguous in your favor with respect to estimated guidelines. And now you want to read a plea agreement that doesn't say one word about timing in your favor, rather than in the defendant's favor. I just don't see anything in here that would prevent that. Well, I think it's important to recognize that the appellant did get significant benefits in exchange for his promise to plead guilty in those other cases. Those benefits were not only the government's agreement to dismiss an entire Superior Court case, one of the federal charges, but also benefits that he would get at sentencing. Well, you would certainly be able to charge him for the other Superior Court case when you have- Right. There's no double jeopardy problem for that. I haven't thought all the way through that question. But I do think that the government would be in a very difficult position, I think it would be inconsistent with this agreement, to say that it would have to proceed to sentencing to give appellant all of the benefits under the agreement without ensuring that appellant had done his part. You can make exactly the opposite argument, that the defendant shouldn't have to go to sentencing until it's sure that the government does all of its part. What if the government, at sentencing, had allocated for departure and a variance above any estimated range? Well, then the defendant would say, well, I'm not- why should I have had- why did I plead to this Superior Court counsel? And I think the appellant is differently situated than the government in that he could move to withdraw the agreement without raising a double jeopardy concern. He would be the person putting himself in jeopardy. The government would have difficulty- I mean, if anything, one- this is an obvious point, but one way the ambiguity is cut is that if you look at the 24 to 30 months, what that would seem to presuppose, if everything else could be worked out, is that actually the pleas would happen after the sentencing because that's the only way that the agreement works in light of the fact that the pleas were going to come. Right? Because if the sentencing happened before the guilty pleas in Superior Court happened, then the 24 to 30 months would be right. That calculation would be correct. Would be correct. And so one way to read it is if- there's ambiguities all over the place, but I'm just saying that one way to read it is that what you would glean from the 24 to 30 months that's in the agreement is actually that the pleas in Superior Court would happen after because it's the only way to make sense of all the math. It's clear- and, yes, I think that's right. It's clear to me from this discussion that there are certainly multiple reasonable ways to read this. And in the posture of this case, where an appellant has to make out a plain error and show prejudice, I don't think he can do so. If the Court doesn't have any further questions, we would ask that the judgment be affirmed. Is there time left for the defense counsel? There is no time left for the defense counsel. We'll give you another two minutes. Thank you. Judge Srinivasan, I just want to touch on a point you said, discussing what was understood by all the parties at the time of the plea. The defendant and his counsel did not know that the new state pleas would necessarily take place before the federal sentencing. They were the ones that scheduled the plea, and they're only now saying they would have insisted on that, having state pleas before the federal sentencing. It was not a condition. It was a condition, but not a precondition, in order to get the benefits of the sentencing agreement. More importantly, the notion of, well, maybe all that you really needed to do was disclose that, in reality, it would have turned out to be 24. Instead of 24 to 30, it would have been 27 to 33. What's the big deal? The big deal is we don't know whether this client would have accepted a plea agreement with a range estimated of 27 to 33 months. I have had clients over three months say, no, I'm not taking that deal. And there is no reason to believe that this client would have taken a deal that had a 27 to 33-month range. Well, then we face a whole different set of case law, and that case law is whether the reasonable client, you know, unless you actually know what he would do, which we don't have any proper here. Fair point. We have a small change in the possible sentencing. If you take a plea and exposure to a very large risk, if you don't take the plea and I don't know what the evidence, because I haven't even looked at it, what the evidence was available, maybe there is no evidence, but we've certainly written several opinions on the subject. No, it's a fair point, and there is no evidence in the record that he would not have taken a plea. I don't mean to suggest otherwise. All I'm saying here, bottom line, is government didn't have to ask for more than 30 months. Even under the adjusted sentencing guidelines, it was still a 30-month sentence was within the range. The right thing to do here would have been for them to ask for no more than 30 months when that was the deal, and there's no way I can explain that. I assume you want a sentencing by the, since what they say doesn't bind the district court, I thought the injury to you is that you want a sentencing by the district court with the district court informed of what the correct range is that was agreed to. Is that what you want? I want the district court to resentence with the government indicating that the plea agreement, that they are abiding by the plea agreement and making a recommendation of 30 months, a 30-month sentence, because that was what they deemed and said in the plea agreement was reasonable. I don't know why you don't want to, wouldn't want a resentencing with the correct, the guidelines range in the plea agreement, so even if the district court disagrees with what the government is saying, it can't go over 30 months without making the type of findings necessary to go outside the guidelines range. That would be acceptable as well, obviously, and probably preferable because I think, as Judge Srinivasan said, that probably is the best reading of this plea agreement is that it did contemplate that there would not be two state pleas that would bump the range before the federal sentencing was laid. Let me pause over that one. That would mean that, would that not mean that the sentencing would go forward on an incorrect, estimated, incorrect sentencing guidelines? Regardless of how this got where we are, the accurate sentencing guidelines as of now is the one that includes the bump for the criminal history. So we can't, I don't think, unless you know of a case, we can't impose on the district court a requirement to use a false or an incorrect sentencing guideline just because both sides estimated it incorrectly. It seems to me all we can do is advise the district court of this problem of estimation and let that court take it into account. Am I wrong about that? No, and that was primarily the reason that we argued that it should be remanded for a government recommendation as opposed to readjustment of the sentencing guideline range itself. I mean, I think the only way you get there is if you think the agreement can only be read to say that the pleas shouldn't have happened until after the sentencing. Well, I think that's the most reasonable reading, Your Honor. There was no notice given to this defendant that the D.C. pleas had to take place before the federal sentencing. The only way you get to the estimated guideline range is with that assumption. Otherwise, if that's not the case, then this really is a bait-and-switch where they put an estimated range out there they knew was impossible. That ought to trouble the court. There's no way I can explain that to a client as fair. As I said, in the career offender example, it could create potential for great mischief, and I encourage the court to take all those into account. Do you have any idea? I mean, you're an experienced defense counsel. Do you have any idea whether this is a model plea agreement, that is one that the office uses frequently, my guess is that it is, rather than particularly crafted for this case? I think that's right. I think this is standard language, Your Honor, but all the more reason why it ought to be strictly against the draftsman. It's their language. This ought to be strictly construed against the draftsman. But do you know that a standard language and a context in which the agreement itself contemplates superior court convictions? Because that's what introduces the wrinkle. It might be standard language all the time. It's just that I don't know how often you have these global agreements where. . . It's not that often, Your Honor. And when I say it's standard, it's because I don't know that I've ever had a global plea agreement where this came into play. But I've never had a situation either where the goalpost got moved. I've never seen a situation like this. It's not the norm, but it shouldn't happen. It really shouldn't. Okay, thank you. Can I ask, does the U.S. Attorney's Office know whether this is a sort of standard form or. . . The general language in this agreement, Your Honor, is from a standard plea agreement. I think the interplay of how it works with different convictions in different courts is something that, it may not be unique, but it's certainly not something that happens very often. Okay. All right. Thank you very much. We'll take the matter under submission. Oh, yeah. Oh, yeah. Sorry, sorry, Mr. Smith. He's gone already? Oh, there you are. Thank you very much. You were appointed counsel by the court, and we appreciate your willingness to take on the case.
judges: Garland, Srinivasan, Millett